IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| CATHERINE KIM,<br><br>  Plaintiff,<br><br>  vs.<br><br>COACH, INC., JOHN DOES 1-5, DOE CORPORATIONS 1-5, DOE LLCS 1-5, DOE PARTNERSHIPS 1-5, AND DOE GOVERNMENTAL AGENCIES 1-5,<br><br>  Defendants. | CIVIL NO. 13-00285 DKW-RLP<br><br>ORDER GRANTING DEFENDANT COACH INC.'S MOTION FOR SUMMARY JUDGMENT |

**ORDER GRANTING DEFENDANT COACH INC.'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Catherine Kim alleges gender discrimination and hostile work environment sexual harassment arising out of the alleged touching of her arms, back, and shoulders on several occasions by two male co-workers while working in a retail store. Even assuming a reasonable person would perceive the alleged touching to be "sexual," as well as sufficiently severe or pervasive, Coach

1

is entitled to summary judgment because Kim fails to establish either that Coach knew or should have known of the alleged conduct or that Coach did not properly address it once Kim's accusations were made. Additionally, Kim's retaliation claim is dismissed for failure to exhaust administrative remedies.

## BACKGROUND

Kim, a Korean female, worked as a sales associate at the Coach retail location in Ala Moana Shopping Center, Honolulu, beginning on September 24, 2006. Hazlett Decl. ¶ 3. She transferred to Coach's Hyatt Regency Waikiki location on November 12, 2006. *Id.* Kim requested and was granted a transfer back to the Ala Moana store in April 2009. Lewis Decl. ¶ 2. The number of hours that Kim worked at the Ala Moana store fluctuated from week to week, as did those of other sales associates. Makiya Decl. ¶ 6. According to the general manager of the Ala Moana store, Trisha Makiya, the number of hours that sales associates work is based on the needs of the store and the monthly payroll budget. *Id.*

Between October and December, 2011 Steve Kudo, an associate manager at Coach's Hyatt Regency Waikiki store, was temporarily reassigned to the Ala Moana store during the renovation of the Hyatt location. Makiya Decl.

2

¶ 10. According to Kim, during this period of time, Kudo touched her inappropriately on at least two occasions. Def.'s Ex. C (2/1/14 Kim Dep. Tr.) at 262. She claims that while standing near a watch case in the middle of the store, Kudo touched her arm, back, and waist area. *Id.* When Kudo touched her, she told him "don't do it." *Id.* at 263. Kim said that his hand was on her body for three to four seconds, and "he kind of gave me a smile." *Id.* On the second occasion, Kudo allegedly touched Kim on the back of her right shoulder for about five to six seconds while she was entering the stock room. She described it as "a little bit like push down and then brushed. And then smiling and I know when I see he stare, I know how he feels." *Id.* at 268. According to Kim, Kudo touched her one or two more times after this incident, also in 2011. *Id.* at 269.

Kim claims that another employee, Casey Dungca, an Ala Moana store assistant manager, began touching her arms and shoulders in September 2009. Kim Decl. ¶ 5. On November 27 or 28, 2011, while Kim was eating in the employee lounge, she claims that Dungca came up from behind her and put both his arms around her and held her. According to Kim, Dungca "was kind of holding and almost hugging me," and that he "grabbed, he kind of hold around me." *Id.* at 226, 270. Kim claims that she told Dungca "don't do it." *Id.* at 227.

3

Kim felt it "was a little bit sexual." *Id*. at 227. "His, you know, his stare was a little different than a normal staring. In his staring had something, you know, I can feel it." *Id*. at 230. She said "before that he had sometimes touched me just the way, you know, on my wrist area, around here, patting me." *Id.* at 228. Later, on an unspecified date in 2012, Kim was working at the cash register when Dungca allegedly came up from behind her and wrapped his arms around her, his chest touching her back. She pushed him away and told him to stop touching her. Kim Decl. ¶ 7.

On June 29, 2012, Coach issued a performance plan to Kim. Def.'s Ex. J. Coach contends that Kim's performance as a sales associate had never been strong, and throughout 2012, Coach documented her performance problems. Makiya Decl. ¶ 12. Managers had conversations with Kim regarding her failure to meet performance expectations on March 21, April 11, April 22, May 8, May 16, and May 25, 2012. *Id*.; Ex. J. Coach asserts that it issued the written performance plan on June 29, 2012 because Kim's performance failed to improve following these meetings. Makiya Decl. ¶¶ 12-13; Ex. J. The performance plan warned that "[f]ailure to demonstrate improved performance may lead to further disciplinary action up to and including termination of your employment at

anytime." Ex. J. According to Kim, "the Coach managers were looking for a way to terminate me by making unfair complaints about me." Kim Decl. ¶ 10. Kim refused to sign the performance plan, as she believed it was not fair or accurate.

On July 1, 2012, Kim called Coach's corporate human resources department in New York and left a voice message saying she wanted to talk about "working matters." Def.'s Ex. B (1/16/14 Kim Dep. Tr.) at 110-111. Katrina Hazlett, a manager in Coach's human resources department in New York, returned Kim's call but Kim told her she did not want to discuss the matter over the telephone. Hazlett therefore arranged for Kim to meet with Ivy Lewis, Coach's District Manager for Hawaii, in person, to discuss the matter. Hazlett Decl. ¶ 13. During their July 10, 2012 meeting, Kim told Lewis that Lewis was not permitted to ask Kim any questions. Lewis Decl. ¶ 5. Kim told Lewis that Dungca had touched her, but refused to respond when Lewis asked her questions about the incident. *Id.* ¶ 6. Kim did not mention anyone else touching her at this meeting, including Kudo. *Id.* According to Kim, Lewis was not sympathetic and did not believe her report of sexual harassment. Kim Decl. ¶ 12.

Following the July 10, 2012 meeting between Lewis and Kim, Coach investigated Kim's claims and interviewed several employees. Lewis Decl. ¶¶ 7-10. During the investigation, Lewis interviewed Dungca, who told her that he once put his hand on Kim's shoulder to direct her to a customer that had walked into the store. *Id.* ¶ 8. Dungca said that Kim reacted by telling him, "do not touch me," so he apologized and said he did not mean anything by it; Dungca also said he had been careful to avoid touching Kim ever since. *Id.* Lewis interviewed other employees in the store, but none reported seeing Dungca touch Kim. *Id.* ¶ 9.

As a result of the investigation, Coach management concluded that Dungca had touched Kim on one occasion, but that it was not sexual in nature. *Id.* ¶ 11; Richardson Decl. ¶ 4. Lewis nevertheless instructed Dungca not to touch Kim again. Lewis Decl. ¶ 11. Hazlett informed Kim of the results of the investigation in a July 26, 2012 letter and thanked her for bringing her concerns to Coach's attention. Hazlett Decl. ¶ 15; Ex. L. In the letter, Hazlett reiterated Coach's open door policy and invited Kim to contact her or Lewis if she had any further questions or concerns. Hazlett Decl. ¶ 15; Ex. L. Kim later left Hazlett a voicemail stating that she had received the letter, and appeared to disagree with the

6

investigation findings, but did not make any new allegations or provide any further information. Hazlett Decl. ¶ 16.

On August 20, 2012, Kim filed a complaint with the Hawaii Civil Rights Commission ("HCRC"), alleging discrimination based on "sex" and "race," and that she was sexually harassed. Kim Decl. ¶13, Ex. 1 (HCRC Pre-Complaint Questionnaire). Thereafter, Kim filed her complaint in state court on February 21, 2013, and Coach removed the action to this Court on June 5, 2013. The complaint asserts that Kim was subject to sexual harassment and unwanted touching. Complaint ¶ 5. She alleges unwanted touching by Dungca in September 2009 and November 28, 2011, and by Kudo between August 2011 and December 2011. Complaint ¶¶ 6-9. Kim alleges the following causes of action: (1) sexual harassment (Count I); (2) violation of state and federal discrimination laws due to sex (Count II); and (3) retaliation because she opposed the discrimination (Count III).

Kim resigned from Coach in September 2013. At the time of her resignation, she told management that she was resigning because she wanted to work more hours. Makiya Decl. ¶ 15. Kim claims that her hours were reduced after she filed the instant lawsuit, and she has since filed a new Charge of

Discrimination for retaliation with the Equal Employment Opportunity Commission ("EEOC"). Kim Decl. ¶¶ 14-15; Ex. 3 (4/11/14 EEOC Charge).

Coach seeks summary judgment on all claims.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

### I. Coach Is Entitled to Summary Judgment on Count I

In order to establish a prima facie Title VII hostile work environment sexual harassment claim, a plaintiff must show that she was: "(1) [] subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)). The elements of a hostile work environment sexual harassment claim under HRS § 378-2 are similar, requiring that:

> (1) [the employee] was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was severe or pervasive; (4) the conduct had the purpose or effect of either: (a) unreasonably interfering with the claimant's work performance, or (b) creating an intimidating, hostile, or offensive work environment; (5) the claimant actually perceived the conduct as having such purpose or effect; and (6) the claimant's perception was objectively reasonable to a person of the claimant's gender in the same position as the claimant."

*Nelson v. Univ. of Hawaii*, 97 Hawaii 376, 390, 38 P.3d 95, 109 (2001) (emphasis omitted).

"To prevail on a hostile work environment sexual harassment claim, the plaintiff must show that her work environment was both subjectively and objectively hostile. . . . The plaintiff also must prove that any harassment took place because of sex." *Dominguez–Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) (internal citations and quotation marks omitted); HRS § 378-2 (forbidding discriminatory practices taken by an employer "because of . . . sex").

### A.  Questions of Fact Regarding "Sexual" Conduct

Coach argues that the alleged conduct by Dungca and Kudo was not "of a sexual nature," and that Kim's subjective contention that her body reacted

9

sexually to the unwelcome touching does not establish that it was "of a sexual nature." Coach contends that "a reasonable person would not perceive a touch on the arm, shoulder or back to be sexual." Coach Mem. in Supp. at 20. It also argues that the alleged conduct was not sufficiently severe or pervasive. Kim maintains that "even after telling each harasser to stop what they were doing to her, both Dungca and Kudo continued to touch her in inappropriate and unwelcomed ways." Kim Opp. at 11.

Viewing the evidence in the light most favorable to Kim, the Court finds that Kim has raised triable questions of fact as to whether the alleged conduct was "of a sexual nature," and whether it was sufficiently severe or pervasive. She alleges being subjected on multiple occasions to unwelcome, physical touching that did not cease after she told the male employees to stop. *See* Kim Decl. ¶ 6 (Dungca "wrapped both of his arms around my arms pinning my arms against my sides. He was so close to me that his chest was touching my back. I told him to stop touching me. I felt this was clearly sexual in nature. He had no reason to put his arms around me and touch my back with his chest."); *id.* ¶¶ 8-9 ("I told [Kudo] each time he touched me to stop touching me, but he continued to do so. I felt this was sexual in nature because he had no reason to keep touching me, even

after I told him not to put his hands on my body. . . . After this incident [Kudo] touched and rubbed my shoulders on several occasions. I told him each time to stop touching, but he would not stop.").

Considering several relevant factors, including the frequency of the alleged misconduct, its severity, its physically threatening or humiliating nature, and its tendency to unreasonably interfere with work performance, the Court finds a question of fact as to whether a reasonable person with the same characteristics as Kim would perceive the workplace as hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-23 (1993); *see also Arquero v. Hilton Hawaiian Village LLC*, 104 Hawai'i 423, 432, 91 P.3d 505, 514 (2004) (examining "general distinction between name-calling and physical contact set forth in *Harris* and discussed by many federal courts in analyzing whether particular conduct is 'severe and pervasive.'").

### B. Coach Is Not Liable for Alleged Harassment

Notwithstanding this conclusion, "where harassment by a co-worker [as opposed to a supervisor or manager] is alleged, the employer can be held liable only where 'its own negligence is a cause of the harassment.'" *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001) (citing *Burlington Indus., Inc. v. Ellerth*, 524

U.S. 742, 759 (1998)). "Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct." *Swenson*, 271 F.3d at 1191-92; *see also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013) ("[W]e have held that an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior."). Here, Kim does not contest the absence of negligence on the part of Coach. Rather, Kim argues that Coach is directly liable for Dungca and Kudo's conduct because they were "supervisors," not "employees." In *Vance*, the Supreme Court considered which employees qualify as "supervisors" for purposes of harassment cases, and held that:

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Vance*, 133 S. Ct. at 2443 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Notably, the "ability to direct another employee's tasks is simply not sufficient" to make someone a supervisor. *Id.*

Kim argues that Dungca and Kudo were "assistant store managers," that she worked under their "direct supervision," and that she "would need to follow their instructions because they were my supervisors." Kim Decl. ¶ 4. Even assuming that Dungca was present at the June 2012 meeting to discuss Kim's performance plan, Kim presents no evidence that Dungca was able to hire, fire, promote, demote, or reassign any employee, much less herself. *See* Makiya Decl. ¶¶ 8-11 (Dungca and Kudo did not have "authority to hire or fire employees, to promote or demote employees, to reassign employees to different jobs or to change any employee's pay or benefits. I am the only one at Coach's Ala Moana store that has the authority to take any of those actions, and I would only take such actions after first consulting with my District Manager, Ivy Lewis."). There is no question of fact that neither Dungca nor Kudo had the authority to hire or fire employees, to promote or demote employees, to reassign employees to a different job, or to make any decision causing a significant change in benefits at Coach's Ala Moana store. Therefore, neither Dungca nor Kudo could affect the terms of Kim's employment and were not "supervisors" within the meaning of *Vance*.

Where, as is the case here, an employee is allegedly harassed by co-workers, the employer may still be liable if it knows or should know of the

harassment but fails to take steps "reasonably calculated to end the harassment." *Dawson v. Entek Int'l*, 630 F.3d 928, 938 (9th Cir. 2011). It is undisputed that Coach's anti-harassment policy in its Retail Employee Guides was available to all employees and that Coach provided information about this policy and phone numbers to report harassment on its intranet page. *See* Hazlett Decl. ¶¶ 4-11, Exs. E-I. When Kim contacted Coach in July 2012 to complain that Dungca had touched her, Coach immediately initiated an investigation and instructed Dungca not to touch Kim again, even though its investigation revealed no inappropriate conduct. *See* Richardson Decl. ¶ 4; Lewis Decl. ¶ 11; Ex. L. Kim admits that since Coach's investigation, Dungca has not touched her. After Coach later received Kim's HCRC Charge of Discrimination, it investigated the additional allegations of touching not previously disclosed. Richardson Decl. ¶ 6. At the hearing on the motion, Kim acknowledged that Coach has not been negligent in its response to her complaints of harassment.

    In sum, even finding a genuine issue of material fact regarding whether severe and pervasive harassment of a sexual nature occurred, Coach is entitled to summary judgment on Count I.

## II. Coach Is Entitled to Summary Judgment on Count II

The Court applies the burden-shifting framework, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Kim's Count II gender discrimination claims under Title VII, 42 U.S.C. § 2000e, and Hawaii Revised Statutes § 378-2. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (applying *McDonnell Douglas* framework to Title VII case); *Hac v. Univ. of Hawaii*, 102 Hawai'i 92, 101, 73 P.3d 46, 55 (2003) ("This court has adopted the *McDonnell Douglas* analysis in HRS § 378-2 discrimination cases.").

> Under this framework, Plaintiff has the initial burden to establish a prima facie case of discrimination. *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and quotation omitted). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted).

*Hughes v. Mayoral*, 721 F. Supp. 2d 947, 957-58 (D. Haw. 2010).

A prima facie case under *McDonnell Douglas* requires a plaintiff to prove that: (1) she belongs to a protected class; (2) she performed her job adequately or satisfactorily; (3) she suffered an adverse employment action; and

(4) other similarly situated employees who do not belong to the same protected class were treated differently. *McDonnell Douglas*, 411 U.S. at 802; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

> After a plaintiff establishes a prima facie showing of discrimination, the burden under the *McDonnell Douglas* framework shifts to a defendant to put forward a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. A defendant's burden to articulate some legitimate, nondiscriminatory reason for the challenged action is merely a burden of production, not persuasion. *Chuang v. Univ. of Cal. Davis Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If a defendant puts forth a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the given reason is merely pretext for a discriminatory motive. *Boeing Co.*, 577 F.3d at 1049 (citation and quotation omitted).

*Hughes*, 721 F. Supp. 2d at 957-58.

In opposition, Kim offers no allegation or fact showing disparate treatment. To be clear, she offers no evidence that females were treated any differently than males. In fact, Kim makes no attempt to demonstrate that she is similarly situated to any employees that receive more favorable treatment. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Rather, Kim's opposition focuses on her sexual harassment claim, and does not appear to address her claim

16

for gender discrimination. Accordingly, Kim fails to establish a prima facie case of gender discrimination, entitling Coach to summary judgment on Count II.

## III. The Court is Without Subject Matter Jurisdiction to Hear Count III

This Court has subject matter jurisdiction over discrimination and retaliation claims only after a plaintiff has exhausted his or her administrative remedies by filing an administrative complaint with the HCRC or EEOC and allowing the agency the opportunity to investigate. *See, e.g., B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge."); *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc.*, 76 Hawai'i 454, 460, 879 P.2d 1037, 1043 (1994) (Holding that "the timely filing of an administrative complaint with the [state agency] was precondition to civil suit under HRS § 378-2.").

It is undisputed that Kim's HCRC Charge of Discrimination did not check the box for "retaliation," did not otherwise mention retaliation, and did not assert a factual basis for retaliation, such as through a reduction of hours following Kim's complaint of harassment. *See* Ex. Q; *see also Vasquez v. County of Los*

17

*Angeles*, 349 F.3d 634, 645 (9th Cir. 2003) ("Because [plaintiff] did not present the legal theory of unlawful retaliation, and the operative facts regarding this part of his claim were not related to the facts in the EEOC charge, he did not exhaust his administrative remedies. Thus, we have no jurisdiction to hear the claim that [defendant] retaliated against [plaintiff] for filing an EEOC charge.") (footnote omitted). At the hearing on Coach's motion, Kim conceded that she had not exhausted her claim for retaliation, and noted that she filed a new charge with the EEOC in April 2014, alleging retaliation for the first time. Accordingly, this Court does not have subject matter jurisdiction over Kim's present retaliation claim and Count III is hereby dismissed.

## CONCLUSION

On the basis of the foregoing, the Court GRANTS Defendant Coach, Inc.'s Motion for Summary Judgment. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED: May 30, 2014 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

Kim v. Coach, Inc., Civ. No. 13-285; ORDER GRANTING DEFENDANT COACH INC.'S MOTION FOR SUMMARY JUDGMENT